UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARCUS RIVERA, *Plaintiff*, | : | |
| | : | CASE NO. 3:26-cv-1317 (KAD) |
| v. | : | |
| | : | |
| JANE MANGIAFICO, et al., *Defendants*. | : | October 21, 2026 |

**INITIAL REVIEW ORDER**

Kari A. Dooley, United States District Judge

Marcus Rivera ("Plaintiff"), a sentenced inmate at MacDougall-Walker Correctional Institution ("MacDougall"),[1] filed this civil rights complaint *pro se* under 42 U.S.C. § 1983 against MacDougall Deputy Warden Jane Mangiafico and Correctional Officer John Landrie alleging violations of his Constitutional rights. Plaintiff seeks damages, injunctive relief, and declaratory relief. For the reasons that follow, Plaintiff may proceed on his Eighth Amendment excessive force claim against Defendant Landrie. All other claims are **DISMISSED**, and Defendant Mangiafico is terminated.

**Standard of Review**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)–(b). In doing so, the Court must assume the truth of the allegations and interpret the complaint liberally to "to raise the strongest arguments it suggests." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007);

[1] Plaintiff was sentenced on April 5, 2023, and resides at MacDougall. *See* Department of Correction ("DOC"), *Inmate Information*, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num =429134 (last visited October 14, 2026). The Court may take judicial notice of content on this website. *See Costa v. Kocaqi*, 2025 WL 1207538, at *2 n.3 (D. Conn. Apr. 25, 2025).

*see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

The Court summarizes the allegations below.

Plaintiff was housed in N-Pod at MacDougall on April 4, 2025. Compl., ECF No. 1, ¶ 8. On that date, Defendant Landrie entered N-Pod to separate inmates after a "Code White." *Id.* Plaintiff approached his cell in response to an order to "lock up." *Id.* ¶ 9. As Plaintiff attempted to enter his cell, Defendant Landrie "slammed" Plaintiff on the floor. *Id.* Plaintiff was not violating any prison rules or being "disruptive" or "combative" when this happened. *Id.*

Plaintiff asked for medical attention after Defendant Landrie slammed Plaintiff on the floor. *Id.* ¶ 11. Prison staff denied Plaintiff's request. *Id.* Prison staff placed Plaintiff in a dark shower over his protests. *Id.* The shower lacked a shower mat and adequate lighting. *Id.* ¶ 12. Plaintiff told correctional officers that he was "feeling numb" and was in "serious pain" due to Defendant Landrie slamming Plaintiff on the floor. *Id.* After approximately three minutes in the shower, Plaintiff slipped and fell because he could not feel his legs and could no longer walk. *Id.* ¶ 13. Plaintiff remained in the shower in handcuffs and in pain. *Id.*

Approximately five minutes after Plaintiff fell in the shower, correctional officers placed

Plaintiff on a stretcher and transported him to the hospital. *Id.* ¶ 14. After delivering medical care to Plaintiff, hospital staff gave Plaintiff a walker. *Id.* ¶ 15. Prison staff temporarily placed Plaintiff in the Restrictive Housing Unit after Plaintiff returned to MacDougall from the hospital. *Id.*

Prison staff placed Plaintiff back into N-Pod the following day despite Plaintiff's written request to Defendant Mangiafico not to be placed there because of his "mobility issues." *Id.* ¶ 16. Three days later, on April 8, Plaintiff slipped and fell in the shower because it lacked shower mats. *Id.* Plaintiff again slipped and fell on April 16, this time in his cell due to his ongoing pain from the April 4 incident. *Id.* ¶ 17. Plaintiff was again taken to the hospital, where a slipped disc was discovered. *Id.*

In May of 2026, Defendant Landrie admitted to Plaintiff that he slammed Plaintiff on the floor because Plaintiff "didn't lock up fast enough." *Id.* ¶ 19. Because Defendant Landrie slammed Plaintiff on the floor, Plaintiff suffers from PTSD, anxiety, and depression. *Id.* ¶ 21. Plaintiff also walks with the assistance of a cane and cannot walk long distances without experiencing severe back pain. *Id.* As a result, Plaintiff also uses a wheelchair. *Id.*

Defendant Mangiafico "refused to acknowledge the incident" despite "signing off" on Plaintiff's grievance on August 14, 2025.[2] *Id.* ¶ 22. Prison staff continue to deny Plaintiff physical therapy at UConn Medical Center. *Id.* ¶ 23. Prison staff also continue to deny Plaintiff pain and "mental health" medications despite his repeated requests. *Id.*

**Discussion**

Interpreted liberally "to raise the strongest arguments it suggests," *Abbas*, 480 F.3d at 639,

---

[2] Plaintiff has submitted with this Complaint Defendant Mangiafico's decision on the grievance. ECF No. 1-1 at 3. Defendant Mangiafico denied Plaintiff's grievance because "[t]here [wa]s no evidence to substantiate [Plaintiff's] claims of any staff misconduct and/or any violation of Administrative Directive 2.17, Employee Conduct." *Id.*

Plaintiff's Complaint asserts (1) an Eighth Amendment excessive force claim related to Defendant Landrie slamming Plaintiff on the floor, Compl. ¶ 27, and (2) an Eighth Amendment deliberate indifference to serious medical needs claim related to Defendant Mangiafico's denial of a "medical mattress" and "outside specialty physical therapy appointments." *Id.* ¶ 29.

To the extent Plaintiff seeks damages from Defendants in their official capacities on these claims, *see* Compl. ¶ 6, this is barred by Eleventh Amendment. *See*, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

To the extent Plaintiff seeks damages from Defendants in their individual capacities on these claims, *see* Compl. ¶ 6, Plaintiff must allege facts suggesting the personal involvement of each defendant in the alleged constitutional violations. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). "Personal involvement," the Second Circuit has said, means either direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (footnote omitted). This applies to supervisory officials, as well. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (Plaintiff "cannot rely on a separate test of liability specific to supervisors").

Before the Court considers whether any defendant was personally involved in violating Plaintiff's rights, it must first consider the threshold question giving rise to a § 1983 claim — whether Plaintiff's rights were violated. *See* 42 U.S.C. § 1983. Thus, the Court first considers whether Plaintiff has stated an Eighth Amendment claim and next considers whether any defendant was personally involved in the violation. The Court discusses Plaintiff's Eighth Amendment claims in turn.

*Excessive Force*

For convicted prisoners, like Plaintiff, courts evaluate excessive force claims brought against prison officials under the Eighth Amendment.[3] *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) (concluding that the Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified"). An Eighth Amendment excessive force claim comprises both an objective and subjective component. *See Sims v. Artuz*, 230 F.3d 14, 20–21 (2d Cir. 2000).

To satisfy the objective component, a prisoner "must allege that the conduct was objectively 'harmful enough' or 'sufficiently serious' to reach constitutional dimensions." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8, 20 (1992)). "Although not 'every malevolent touch by a prison guard gives rise to a federal cause of action,' the Eighth Amendment is offended by conduct that is 'repugnant to the conscience of mankind.'" *Id.* (quoting *McMillian*, 503 U.S. at 9–10). "Actions are repugnant to the conscience of mankind if they are 'incompatible with evolving standards of decency' or involve 'the unnecessary and wanton infliction of pain.'" *Id.* (quoting *Hudson*, 503 U.S. at 10); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (stating that the Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . against which we must evaluate penal measures" (internal quotation marks and citation omitted)).

To satisfy the subjective component, "a plaintiff must show that the prison officials had 'a state of mind that is the equivalent of criminal recklessness.'" *Matzell v. Annucci*, 64 F.4th 425, 435

[3] Although the Eighth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment, "in these circumstances the Due Process Clause affords [a prisoner] no greater protection than does the Cruel and Unusual Punishments Clause." *Whitley*, 475 U.S. at 327.

(2d Cir. 2023) (quoting *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019)). "The subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016) (internal quotation marks and citation omitted).

"For excessive force claims, as contrasted with other actions or inactions that rise to the level of Eighth Amendment violations, the test for wantonness 'is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)). In determining whether defendants acted maliciously or wantonly, courts examine several factors including: "the extent of the plaintiff's injuries; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citations omitted); *see also Harris*, 818 F.3d at 63.

Here, Plaintiff alleges that Defendant Landrie "slammed" Plaintiff on the floor even though Plaintiff was not violating prison rules, was not being "disruptive," and was not being "combative." He later alleges that Defendant Landrie stated that his actions were because Plaintiff "didn't lock up fast enough." While it is plausible that some force may be necessary to maintaining discipline when a prisoner fails to lock up in a reasonable amount of time, Plaintiff's allegations of the amount of force used and the extent of his resulting injuries are sufficient to permit a reasonable inference that the force was not used in good faith but rather was malicious and intended to cause harm. Thus, Plaintiff allegations are sufficient for an Eighth Amendment excessive force claim on initial review

and Plaintiff may pursue this claim against Defendant Landrie in his individual capacity. *See Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) ("[C]ertain actions, including the malicious use of force to cause harm, constitute Eighth Amendment violations per se.")

Plaintiff may not, however, pursue this claim against Defendant Mangiafico in her individual capacity. In the section of the Complaint entitled "Legal Claims for Relief," Compl. at 11 (capitalization altered),[4] Plaintiff maintains that Defendant Mangiafico violated Plaintiff's Eighth Amendment rights by "signing off on Plaintiff[']s grievance," "failing to correct Defendant Landrie[']s misconduct," and "failing to take remedial action." *Id.* ¶ 28. But none of these allegations establish Defendant Mangiafico's personal involvement in Defendant Landrie's alleged use of excessive force.

"To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti*, 983 F.3d at 620. As a result, "[r]eceiving post hoc notice does not constitute personal involvement in the unconstitutional activity and cannot be said to have proximately caused the damage suffered by the inmate." *Brown v. Quiros*, NO. 3:25-CV-1202 (KAD), 2026 WL 242137, at *8 (D. Conn. Jan. 29, 2026) (internal quotation marks and citation omitted). Likewise, "failing to remedy a wrong after learning of it [falls into] a category of supervisory liability no longer available after *Tangreti*." *Lopez v. Capega*, No. 3:24-CV-00225 (SVN), 2024 WL 2801702, at *5 (D. Conn. May 31, 2024). Because Plaintiff's allegations rely on post hoc knowledge and subsequent failure to remedy the wrong, they are insufficient to plausibly allege personal involvement. Accordingly, any Eighth Amendment excessive force claim against

[4] The Court will continue to omit unnecessary capitalization throughout this order.

Defendant Mangiafico must be dismissed.

*Deliberate Indifference to Serious Medical Needs*

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners[.]'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle,* 429 U.S. at 104). "To establish deliberate indifference, the plaintiff must prove that 'the prison official knew of and disregarded the plaintiff's serious medical needs.'" *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)). To establish a defendant's personal involvement in such a violation, Plaintiff must allege facts suggesting that a defendant "treated [Plaintiff] or w[as] otherwise aware of his concerns." *Shand v. Conn. Dep't of Correction*, No. 3:21-CV-523 (SVN), 2022 WL 503952, at *11 (D. Conn. Feb. 18, 2022); *see also Raynor v. Erfe*, No. 3:20-CV-1102 (VLB), 2022 WL 972441, at *7 (D. Conn. Mar. 31, 2022) (granting summary judgment in favor of defendants who were "not personally involved in the treatment of [plaintiff] following [his] fall.").

The Court has liberally construed Plaintiff's Complaint as alleging that Defendant Mangiafico was deliberately indifferent to Plaintiff's serious medical needs by denying Plaintiff a "medical mattress" and "outside specialty physical therapy appointments." Compl. ¶ 29. Under some circumstances, denying a prisoner a medical mattress or physical therapy appointments may constitute deliberate indifference. *See*, *e.g.*, *Mejia v. Quiros*, No. 3:25-CV-694 (JCH), 2025 WL 3754427, at *7 (D. Conn. Dec. 29, 2025) (permitting deliberate indifference to serious medical needs claim "related to the denial of a medical mattress" to proceed against defendant who "interfered" with prisoner's request for medical mattress); *Ibbison v. Quiros*, No. 3:22-CV-01163 (SVN), 2023 WL 1766440, at *15 (D. Conn. Feb. 3, 2023) (noting that "the failure to provide prescribed physical

therapy may support a prisoner's deliberate indifference claim"). But Plaintiff does not allege facts suggesting that Defendant Mangiafico played any part in denying Plaintiff a medical mattress or physical therapy, such that Defendant Mangiafico was personally involved in a deliberate indifference to serious medical needs violation.

Plaintiff does not mention a medical mattress anywhere in his Complaint other than his "Legal Claims for Relief" section. *See* Compl. ¶ 29. Only there does Plaintiff allege that Defendant Mangiafico denied Plaintiff a medical mattress. *See id.* This single, conclusory allegation is insufficient to establish Defendant Mangiafico's personal involvement in a deliberate indifference claim. *See Iqbal*, 556 U.S. at 678.

Plaintiff mentions the denial of physical therapy appointments outside of his "Legal Claims for Relief" section, but he does not allege that Defendant Mangiafico denied those physical therapy appointments. *See* Compl. ¶ 23. Rather, Plaintiff alleges broadly that he "continues to be denied necessary physical therapy appointments at UConn" and "continues to be denied pain and mental health medication despite multiple written request[s] to staff/correctional employees." *Id.* But Plaintiff does not mention who his requests have been directed to or who denied his physical therapy appointments or medication.

"As a corollary of the personal involvement requirement, complaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." *Gonzalez v. Yepes*, No. 3:19-CV-00267 (CSH), 2019 WL 2603533, at *7 (D. Conn. June 25, 2019) (internal quotation marks and citation omitted); *see also Bugg v. Quiros*, No. 3:26-CV-996 (SRU), 2026 WL 2254800, at *3 (D. Conn. Aug. 5, 2026) (plaintiff's use of terms "like 'Defendants,' 'medical staff,' and 'correctional officers' throughout his complaint,

without differentiating which defendants, medical staff members, or correctional officers allegedly engaged in the acts that violated his constitutional rights" was insufficient to establish any defendants' personal involvement). Because Plaintiff fails to establish any named defendants' personal involvement in a deliberate indifference to serious medical needs claim, that claim is dismissed for failure to state a claim.

*Request for Injunctive Relief*

Although the Eleventh Amendment bars plaintiffs from suing state officials for damages in their official capacities, *see Graham*, 473 U.S. at 169, "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citing *Ex parte Young*, 209 U.S. 123 (1908)). But those violations of federal law must be "ongoing" and the desired relief "properly characterized as prospective," rather than remedying past violations. *Id.* (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)).

First, although Plaintiff requests the Court to order "all defendants to cease their physical violence and mental threats towards Plaintiff," Compl. ¶ 32, Plaintiff has not alleged ongoing physical violence and mental threats by any of the defendants. Rather, his allegations of physical violence are almost entirely related to the single instance of assault by Defendant Landrie. To the extent that Plaintiff alleges he "suffered two more assaults" at other prisons in December of 2025 and March of 2026, *id.* ¶ 18, these allegations are conclusory and do not appear to involve either of the named defendants. Accordingly, there is no basis for awarding this relief.

Turning next to Plaintiff's claim for deliberate indifference to a serious medical need, as discussed above, he has not established a violation of his rights, let alone an ongoing one. Absent

plausible allegations of an ongoing violation, the Court has no occasion to assess which, if any, of Plaintiff's requests for injunctive relief might be necessary to correct the violation. *See* 18 U.S.C. § 3626(a)(1)(A) (injunctive relief must be "narrowly drawn" and "extend[] no further than necessary to correct the violation of the Federal right"); *see also Ramos v. Univ. of Conn. Health Ctr*., No. 3:17-CV-326 (VAB), 2018 WL 2465356, at *7 (D. Conn. June 1, 2018) ("It would be inappropriate for the Court to grant a request for injunctive relief that is unrelated to the claims and Defendants in the Amended Complaint."). Accordingly, Plaintiff's claims for injunctive relief are dismissed.

*Request for Declaratory Relief*

Plaintiff also seeks "a declaration that the acts and omissions described herein violate[] [his] rights under the United States Constiution and the law of the United States [and] the state of Connecticut." Compl. ¶ 31. But if Plaintiff "were to prevail on any constitutional claim proceeding in this action, a judgment in his favor would serve the same purpose as a declaration that Defendants violated his constitutional rights." *Petion v. Pearson*, No. 3:22-CV-1647 (OAW), 2023 WL 6050054, at *4 (D. Conn. Sept. 15, 2023). Accordingly, Plaintiff's request for declaratory relief is also dismissed.

*Motion to Appoint Counsel*

Plaintiff has separately filed a motion to appoint counsel. ECF No. 5. The Second Circuit requires an "indigent [plaintiff] seeking a free lawyer to first pass the test of likely merit." *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 173 (2d Cir. 1989). At this early stage, the Court cannot sufficiently determine whether Plaintiff's case is of "likely merit." *See id.* Accordingly, this motion is **DENIED** without prejudice to Plaintiff moving for appointment of counsel at a later stage of the proceedings.

**Orders**

Plaintiff may proceed on his Eighth Amendment excessive force claim against Defendant Landrie in his individual capacity. All other claims are **DISMISSED**, and the Clerk of the Court is respectfully directed to terminate Defendant Mangiafico.

Plaintiff is permitted to file an Amended Complaint by **November 20, 2026**, if he can allege facts which address the deficiencies in his pleading identified herein. An Amended Complaint, if filed, **will completely replace the Complaint**, and the Court will not consider any allegations made in the Complaint in evaluating any Amended Complaint.

The Court enters the following additional orders.

(1) **The Clerk shall** verify the current work address for Defendant Landrie with the DOC Office of Legal Affairs, mail a waiver of service of process request packet to Defendant Landrie at the address provided on or before **November 12, 2026**, and report to the Court on the status of the waiver request on the thirty-fifth day after mailing. If Defendant Landrie fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on Defendant Landrie in his individual capacity, and Defendant Landrie shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** send Plaintiff a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) Defendant Landrie shall file his response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claim recited above.

He also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by May 21, 2027. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed on or before June 21, 2027.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(d)(1) provides that he MUST notify the court. **Failure to do so can result in the dismissal of the case**. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendant Landrie or the attorney for Defendant Landrie of his new address.

(9) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendant Landrie's counsel by regular mail.

**SO ORDERED** this 21st day of October 2026 at Bridgeport, Connecticut.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE